In re Complaint of Fecht.

JOHN A. FECHT, SUPERVISOR, WAREHOUSE DEPARTMENT,
NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE, V.
ASPEGREN GRAIN & FERTILIZER, INC., ET AL., APPELLEES,
FRENCHMAN VALLEY FARMERS COOPERATIVE, INC., ASSIGNEE,
APPELLANT.

401 N.W.2d 470

Filed February 20, 1987.   No. 85-441.

James D. Owens of Owens and Owens, for appellant.

John C. Hahn and Gene T. Oglesby, for appellees Aspegren Grain & Fertilizer et al.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

As briefed and argued, this appeal by Frenchman Valley Farmers Cooperative, Inc., seeks to reverse the Nebraska Public Service Commission's decision not to file a district court suit on the bond that Continental Western Insurance Company provided on behalf of Aspegren Grain & Fertilizer, Inc., a public grain warehouse then licensed by the commission. We dismiss the appeal for lack of jurisdiction.

From August through December of 1983, four corn producers undertook to sell corn to the cooperative. Because it lacked storage space, a representative of the cooperative contacted an Aspegren Grain representative and determined the price Aspegren Grain would pay for the corn. Upon the producers' agreement to sell at that price, the cooperative took delivery of the corn and gave the producers a warehouse

receipt. The cooperative in turn delivered the corn to Aspegren Grain, which issued warehouse receipts in the names of the producers. The producers apparently surrendered the warehouse receipts issued by the cooperative and Aspegren Grain to the cooperative. In some manner which is not entirely clear from the record, it appears the receipts issued by Aspegren Grain were ultimately returned to it. One of the producers received payment for the corn from the cooperative in the fall of 1983, when he delivered the corn. The other three did not wish to receive payment until after January 1984, and, therefore, the cooperative did not pay them until then. Aspegren Grain, however, failed to reimburse the cooperative for the payments it had made to the producers.

The cooperative thereupon took purported assignments of the producers' separate claims against Aspegren Grain and filed a complaint with the commission, seeking to recover its losses from the bonding company. Thereafter, the commission, through John A. Fecht, the supervisor of its warehouse department, filed a complaint calling upon Aspegren Grain to show cause why its license should not be revoked. In deciding that the cooperative should "go hence with its claim to a proper tribunal," the commission concluded that the bond did not cover "deferred-payment" contracts such as those involved in the instant case. (It appears the commission overlooked that one of the producers had received payment upon delivery of the corn to the cooperative.)

While the bond is not in the record, it was provided under a statute which at the relevant time provided:

Before any license is issued to any applicant, such applicant shall file with the commission a bond or certificate of deposit in such sum as the commission may require, and on a form and in a manner prescribed by the commission, which shall not be less than one thousand dollars for any warehouseman receiving grain from producers in wagon or truckload lots and not less than twenty-five thousand dollars for warehousemen receiving grain in carload lots. The bond and the certificate of deposit shall run to the State of Nebraska and be for the benefit of all persons storing grain in such warehouse and

persons holding checks for the purchase of grain which were issued by the warehouseman not more than five business days prior to the cutoff date of operations for the warehouse, which shall be the date the commission officially closes the warehouse. The bond shall be conditioned upon such warehouseman carrying combustion, fire, lightning, and tornado insurance sufficient to cover loss upon all stored grain in such warehouse, and the delivery of all stored grain or payment of the value thereof upon the surrender of the warehouse receipt, and upon the faithful performance by the warehouseman of all the provisions of law relating to the storage of grain by such warehouseman, and regulations of the commission relative thereto. The commission may require such increases in the amount of such bond or certificate of deposit, from time to time, as it may deem necessary for the protection of the storage receipt holders. The surety on the bond must be a surety company holding a certificate of the Department of Insurance of the State of Nebraska authorizing it to execute the same.

The bond or an attachment to the certificate of deposit shall particularly describe the location of the warehouse intended to be covered by the bond or certificate. The liability of the surety on the bond shall not accumulate for each successive license period the bond covers. The total liability of the surety shall be limited to the amount stated on the bond or as charged by an appropriate rider or endorsement to the bond.

Neb. Rev. Stat. § 88-503(3)(b) (Supp. 1983).

Thus, the first question to be resolved is whether the commission possessed jurisdiction to construe the foregoing statute and determine whether a bond provided pursuant to its provisions covered the cooperative's claims.

As observed in *In re Complaint of Fecht*, 216 Neb. 535, 344 N.W.2d 636 (1984), the commission's jurisdiction over public grain warehouses is limited to such as is granted by statute.

At the time the commission made its decision in this case, Neb. Rev. Stat. § 88-515(3) (Reissue 1981) provided:

In the event that the commission determines that a

shortage of grain exists at a duly licensed warehouse, necessitating the closing of the warehouse, the commission may:

(a) Take title to all grain stored in the public grain warehouse at that time in trust, for distribution on a pro rata basis to all valid owners, depositors, or storers of grain who shall be holders of evidence of ownership of grain. Such distribution can be made in grain or in proceeds from the sale of grain; or

(b) Commence a suit in district court for the benefit of owners, depositors, or storers of grain.

The commission may deposit the proceeds from the sale of grain under subdivision (a) of this subsection in an interest-bearing trust account for the benefit of the valid owners, depositors, or storers of grain.

There is nothing in that statute, or elsewhere in Neb. Rev. Stat. ch. 88, art. 5 (Reissue 1981 & Cum. Supp. 1984), which purports to empower the commission to construe the provisions of § 88-503(3)(b) or any bond provided thereunder. (Whether such a statute, if enacted, would constitute an unconstitutional conferrence upon the commission of judicial power in violation of Neb. Const. art. II, § 1, is a question not involved in this action.)

Thus, the commission lacked subject matter jurisdiction over the merits of the cooperative's claims against the bonding company. That being so, this court also lacks jurisdiction to determine the merits of the claims, for this court acquires no jurisdiction of a cause appealed from a tribunal which lacked subject matter jurisdiction. *Andrews v. City of Lincoln, ante* p. 748, 401 N.W.2d 467 (1987); *Wood v. Tesch,* 222 Neb. 654, 386 N.W.2d 436 (1986); *Glup v. City of Omaha,* 222 Neb. 355, 383 N.W.2d 773 (1986); *Moell v. Mennonite Deaconess Home & Hosp.,* 221 Neb. 168, 375 N.W.2d 618 (1985).

Accordingly, we dismiss the cooperative's appeal for lack of jurisdiction.

APPEAL DISMISSED.