IN RE ESTATE OF CLARENCE FRANK MARKUS, DECEASED.
EDWARD STENGEL, PERSONAL REPRESENTATIVE OF THE ESTATE OF
CLARENCE FRANK MARKUS, DECEASED, APPELLEE, V. MICHAEL
MARKUS AND ROSEMARIE MARKUS, APPELLANTS.
442 N.W.2d 883

Filed July 21, 1989.   No. 88-064.

Rollin R. Bailey, of Bailey, Polsky, Cada, Todd & Cope, for appellants.

Michael L. Johnson, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This case originated in the county court for Buffalo County as an action to recover losses sustained by an estate allegedly caused by a breach of duty by the estate's personal representative. The appellants, Michael and Rosemarie Markus, contend that Edward Stengel, the personal representative of the Clarence Frank Markus estate, breached his fiduciary duty by failing to sell real property in an efficient and expeditious manner, thereby causing depletion of the estate assets in the sum of $262,122. The county court held that Stengel did not breach a duty to the estate, and this decision was affirmed by the district court.

There is a very long history of litigation in this case. On November 8, 1982, Clarence Markus died, leaving a will and an estate suffering the burden of many debts. At his death,

Markus owned over 650 acres of land upon which he operated a farm and raised and sold quarter horses. In 1979, the operations began to experience financial difficulty. In 1979, Markus lost $31,000; in 1980, he lost $137,000; in 1981, $150,000; and in 1982, he lost $105,000 up to the time of his death in November. In addition, Markus died owing various debts amounting to nearly $950,000, requiring nearly $90,000 annually in interest payments.

Stengel, the brother-in-law of the deceased and the appellee in this action, was named in the Markus will as personal representative. On November 15, 1982, the Buffalo County Court admitted the Markus will to informal probate, appointing Stengel as personal representative.

On January 17, 1983, Stengel filed an inventory based on information he received from a certified public accountant, who had handled the business books for Markus. It was during his conversation with the accountant that Stengel became aware of the dire financial condition the estate was in at that time. Stengel later testified he knew after meeting with the accountant and viewing the business records of the estate that there was no way the estate could be operated profitably.

On December 21, 1982, the heirs under the Markus will, Michael and Rosemarie Markus, filed a petition for formal probate and objections to the appointment of Stengel as personal representative.

Following proceedings in the county court on January 21, 1983, Stengel was formally appointed personal representative. The heirs appealed this appointment to the district court for Buffalo County. On February 16, the county court held a hearing on the motion of the heirs for the setting of bond for their perfection of an appeal to the district court. Bond was set and, on the same date, the county court appointed Stengel as special administrator.

On May 12, 1983, the district court affirmed the decision of the county court. The heirs appealed this decision to the Nebraska Supreme Court, but voluntarily moved to dismiss their appeal on October 17, 1983.

From November 9, 1983, through November 12, 1984, Stengel, acting as personal representative, listed and sold the

real property of the estate. The heirs object to the timing of these sales, claiming undue delay and damage by the failure of the personal representative to dispose of the real property either through his powers as personal representative or as special administrator. Stengel contends that he was without power to sell the real property during the pendency of the numerous appeals and that even if he did have the power, he relied on the advice of his attorney, who informed him he was without power to sell the real estate. At trial, Stengel's attorney, Jeff Jacobsen, testified that he did tell Stengel that Stengel was without power to sell the real property, and in fact sent a letter to the attorney for the heirs informing him of this belief.

The county court, on February 11, 1987, approved the final accounting of the personal representative over the appellants' objections. This decision was affirmed by the district court. On January 4, 1988, the appellants filed a motion for a new trial on the order of the district court affirming the final administrative hearing of the personal representative, which was overruled on January 14.

In finding that Stengel administered the estate in an efficient and expeditious manner, the county court and the district court, in affirming that decision, were deciding a question of fact. As to determinations of fact by the trial court, the standard of review is whether the findings are supported by sufficient evidence, and these findings are not to be disturbed unless clearly wrong. *In re Estate of Massie*, 218 Neb. 103, 353 N.W.2d 735 (1984); *In re Estate of Marsh*, 216 Neb. 129, 342 N.W.2d 373 (1984). In determining the sufficiency of evidence to sustain the trial court's judgment, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in that party's favor, and the party must have the benefit of every inference that can be reasonably deduced therefrom. *In re Estate of Schoch*, 209 Neb. 812, 311 N.W.2d 903 (1981).

The county court found that Stengel was not negligent and had exercised due care in the administration of the estate due to his reasonable reliance upon the advice of his attorney. Stengel's attorney assured him that his power as personal administrator was stayed during the appeals process and that because his

powers as a special administrator were limited, Stengel could not sell the real estate until he was formally appointed as personal administrator.

In the journal entry of February 16, 1983, the county court stated, in part:

Normally in appeals involving the Nebraska Probate Code such as this, a nominal bond would be sufficient. However, Section 24-541.03 of the Nebraska Statutes provides that the appeal herein will be supersedeas and therefore will prohibit the personal representative from acting herein. The estate will be able to minimally function through the appointment of a special administrator. However, because of the limitations on the powers and duties of a special administrator, the estate will be somewhat delayed in its operations.

The estate has over $750,000 in claims now on file with the Court. It is the belief of this Court that such a delay as expected herein may result in a large amount of additional interest which potentially could adversely effect [sic] the claimants herein.

This language clearly indicates that the county court found that Stengel could no longer act as personal representative for the estate, and, instead, any actions taken on behalf of the estate would have to be undertaken by the special administrator.

On February 16, 1983, the court also appointed Stengel special administrator. The letters appointing him provide:

NOW, THEREFORE, these Letters are issued as evidence of such appointment and qualification and authority of *Edward Stengel to do and perform all acts which may be required by law, including the execution of any and all transfer papers or other documents necessary to effectuate the sale of livestock, including 60 head of registered quarter horses, to collect sale proceeds and other monies paid to the estate; to pay the costs incurred in · the sale; to supervise the operation of deceased's ranch and farm property, including payment of wages, utilities, and insurance; to pay all necessary taxes when due; and to perform any other acts necessary for the proper administration and preservation of the estate.*

(Emphasis supplied.)

The county court found that Stengel's attorney believed that the letter appointing Stengel as special administrator limited Stengel and prevented him from selling the real property contained in the Markus estate. On February 18, 1983, Jacobsen wrote to the attorney representing the appellants and indicated: "With the appeal acting as supersedeas, we of course can do nothing further as far as liquidating things in the estate . . . . I want everybody to understand that if certain property brings a lesser amount at a later date, it is not my doing and I don't expect to bear the consequences." The county court considered the fact that Stengel relied upon the advice of his attorney in deciding not to sell the real estate.

Neb. Rev. Stat. § 30-2476(21) (Reissue 1985) provides that a personal representative may properly "employ persons, including attorneys . . . to advise or assist the personal representative in the performance of his administrative duties; [and] *act without independent investigation upon their recommendations . . . .*" (Emphasis supplied.) The evidence clearly supports the county court's finding that Stengel consulted with his attorney regarding the sale of the real property and that his attorney advised that he could not sell real estate pending the appeal proceedings. There is sufficient evidence in the record to support the finding of the trial court that Stengel's reliance on the advice of his attorney was reasonable in this case, as nothing occurred that would cause a reasonable and prudent person to believe that the advice given by Stengel's attorney was incorrect.

We agree with the finding of the county court that there is no evidence that Stengel exercised bad faith or failed to use due prudence and diligence in the estate administration, and therefore we affirm.

AFFIRMED.