HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF GRAND ISLAND, A SAVINGS AND LOAN ASSOCIATION, APPELLANT, V. MCDERMOTT & MILLER, A PARTNERSHIP, ET AL., APPELLEES.

497 N.W.2d 678

Filed April 2, 1993. No. S-90-1163.

Daniel M. Placzek, of Luebs, Beltzer, Leininger, Smith & Busick, for appellant.

Les Seiler, of Brock & Seiler, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

Home Federal Savings & Loan Association of Grand Island (Home Federal) appeals the judgment of the district court awarding Home Federal approximately $12,600 from appellees McDermott & Miller, P.C. (the corporation), and Integrated Computer Concepts, Inc. (Although Integrated Computer Concepts remains a named party to this suit, it was dissolved after its assets were purchased by the corporation. We will refer to the corporation and Integrated Computer Concepts as defendants.) The district court arrived at the award amount by allowing defendants a setoff of $19,149.05. Home Federal thus appealed to this court. We reverse, and remand with directions.

This action represents a second appeal from proceedings we first considered in *Home Fed. Sav. & Loan Assn. v. McDermott & Miller*, 234 Neb. 11, 449 N.W.2d 12 (1989). That opinion more greatly details the facts surrounding the case.

On January 2, 1979, the corporation purchased an accounting practice from McDermott & Miller, a partnership (the partnership). Pursuant to a 1981 agreement, the corporation agreed to accelerate the payments for the accounting practice to one of the partnership's partners, Martin Chapman. Chapman was also a shareholder and employee of the corporation.

Under the 1981 agreement, if the acceleration payments required the corporation to borrow money at an increased interest rate, Chapman would indemnify the corporation for the difference in interest. The indemnification was to occur by reducing Chapman's bonuses, using a "differential rate" equation. Depending on certain contingencies, the agreement also allowed the corporation to recover the interest rate differential by offsetting against "any monies otherwise owing Chapman."

Chapman later assigned his right to the accelerated payments to Home Federal as security for a loan. Home Federal notified the partnership of the assignment on August 1, 1985, and requested direct receipt of the monthly payments.

On August 1, Home Federal received three partnership checks which represented payments under both the accounting and computer transactions. Following those payments,

however, defendants withheld accounting practice payments from the partnership that would have been made to Chapman. The partnership also withheld Chapman's portion of the computer business payments. Home Federal then sued defendants and the partnership, seeking, under the assignment, to recover Chapman's share of the payments.

On the original appeal to this court, we affirmed the trial court's judgment for Home Federal against the partnership. *Home Fed. Sav. & Loan Assn., supra.* Home Federal thus received all the undistributed payments held by the partnership. The district court then reviewed the record to determine Home Federal's rights against defendants. *Id.*

The district court ruled that defendants could assert their setoff defense against Home Federal and were thus entitled to an "indemnity of interest" in the amount of $19,149.05. In so ruling, the court held that the corporation had not waived the setoff defense and was not estopped from asserting it. The court awarded Home Federal a judgment of $7,797.80, prejudgment interest of $4,833.28, and postjudgment interest. The court denied Home Federal's subsequent motion for new trial.

Restated, Home Federal alleges that the district court erred by (1) finding that the corporation had not waived the setoff defense; (2) finding that the corporation was not estopped from raising the setoff defense; (3) determining that the 1981 agreement provided for any "interest rate differential" setoff, especially a setoff as extensive as the one awarded; (4) not determining that defendants failed to adequately prove the amount of setoff; and (5) overruling Home Federal's motion for new trial. Because we find it dispositive, we address only Home Federal's fourth assignment of error.

Home Federal argues that (1) defendants have failed to adequately prove the amount of the claimed setoff and (2) pursuant to the 1981 agreement, defendants have failed to timely assert their setoff claims. Home Federal's contentions may be distilled to an argument that defendants have foregone the remedial provisions of their own contract. Because this argument hinges on the provisions of the 1981 agreement, we turn to the applicable language from that document.

The 1981 agreement, which provided for acceleration of Chapman's payments for the accounting practice, states, in relevant part:

> 5. *INDEMNITY FOR INTEREST*: As COR-PORATION will incur, or may incur, certain interest costs which it would not otherwise have incurred but for this [acceleration] Agreement, CHAPMAN agrees to indemnify and hold the CORPORATION harmless from such increased interest costs. *During the time CHAPMAN is an employee of CORPORATION, CHAPMAN'S compensation will be reduced in the form of reduced bonuses . . .* but his regular base salary payments shall not be reduced. . . .
>
> . . . .
>
> f. *Should CHAPMAN'S employment terminate with the CORPORATION, or shall no bonus be available from which to pay CORPORATION*, he shall indemnify and hold the CORPORATION harmless, *yearly*, on any interest costs incurred by the CORPORATION . . . and the CORPORATION is authorized to offset such amounts *against any monies otherwise owing CHAPMAN.*

(Emphasis supplied.)

We have repeatedly held that if the contents of a document are not ambiguous, the document is not subject to interpretation and will be enforced according to its terms. *Elson v. Pool*, 235 Neb. 469, 455 N.W.2d 783 (1990). See, also, *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989); *Young v. Tate*, 232 Neb. 915, 442 N.W.2d 865 (1989). Furthermore, the words of a contract must be given their plain and ordinary meaning, as an average, ordinary, or reasonable person would understand them. *Elson, supra*; *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988).

Whether a document is ambiguous is a question of law. *Knox, supra*. As an appellate court considering such a question, we are obligated to reach a conclusion independent of the trial court's decision. *Howard v. City of Lincoln*, ante p. 5, 497 N.W.2d 53 (1993); *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993).

With the foregoing rules in mind, we turn to the language of the 1981 agreement. The language is clear and unambiguous and does not require construction. Under the pertinent provisions of the agreement, the corporation may recover the interest rate differential in three situations. First, while Chapman is one of its employees and receives bonuses, the corporation may recover by reducing Chapman's bonuses. Second and third, if Chapman receives no bonuses, or ceases to work for the corporation, the corporation may offset against any other monies owed to Chapman—on a yearly basis. Given its plain and ordinary meaning, the contractual language clearly lends itself to this interpretation.

However, even if defendants asserted some other meaning for the contract, e.g., that "no bonus" means "no bonus adequate to cover that year's interest differential," it would be to no avail. Where there is a question as to a contract's meaning, we apply the general rule that the contract will be construed against its drafter—here, the corporation. See, *Artex, Inc. v. Omaha Edible Oils, Inc.*, 231 Neb. 281, 436 N.W.2d 146 (1989); *Gard v. Pelican Publishing Co.*, 230 Neb. 656, 433 N.W.2d 175 (1988).

The party who pleads a setoff bears the burden of proving it. *Heusser v. McAtee*, 151 Neb. 828, 39 N.W.2d 802 (1949); *Citizens Nat. Bank v. Rawley*, 131 Neb. 10, 267 N.W. 151 (1936). See, also, *Carlson v. Nelson*, 204 Neb. 765, 285 N.W.2d 505 (1979), *modified* 205 Neb. 483, 288 N.W.2d 489 (1980). Thus, defendants bore the burden of proving that they were entitled to a setoff under the 1981 contract. They have not done so.

As stated before, during the time Chapman was in its employ, the corporation could reduce his bonuses to recover the interest rate differential. Pursuant to subsection 5(f) of the agreement, if Chapman was an employee, yet received no bonus, the corporation could annually offset the interest rate differential against any other monies owing Chapman, including his payments for the sale of the accounting practice. Should it cease to employ Chapman, the corporation could also, on a yearly basis, offset against the accounting-practice payments.

The foregoing summary of the 1981 agreement's setoff

provisions emphasizes the importance of two questions. First, did Chapman cease to be employed by the corporation, and if so, when? Second, did Chapman receive any bonuses, and if so, in what amount? The record fails to adequately answer either of these questions.

The record indicates that Chapman was employed by the corporation at least until May 28, 1985. Because Chapman was an employee during that time and because defendants now seek to offset against proceeds from the sale of the accounting practice ("monies otherwise owing Chapman"), the 1981 agreement requires defendants to show that Chapman received no bonuses during that period. See *Heusser, supra*; *Citizens Nat. Bank, supra*.

The record contains no indication that bonuses were not paid prior to May 28, 1985. In fact, the corporation's president admitted that in one of the years at issue, setoff had been claimed against a bonus owed to Chapman. Neither does the fact that defendants sought to recover "monies otherwise owing" indicate that Chapman received no bonuses. "Evidence from which a conclusion can be arrived at only by guess or conjecture does not sustain one's burden of proof." *Moudry v. Parkos*, 217 Neb. 521, 526, 349 N.W.2d 387, 390 (1984). Defendants, having failed to meet their burden of proof for the period preceding May 28, are not entitled to a setoff for that period.

The record is even less supportive of defendants' setoff claim for the period following May 28. There is no indication of how long Chapman remained an employee of the corporation after that date. The record indicates only that sometime after May 28, Chapman resigned.

Following Chapman's resignation, and assuming he received no bonuses when he ceased to be an employee, the corporation could simply make yearly setoff claims against the 1979 contract payments, which the corporation began doing in August 1985. Thus, the initial fact of concern is the date that Chapman's employment ended; that fact is not part of the record. Furthermore, the record is again silent regarding Chapman's bonuses—if, when, and to what extent they were paid. Having failed to establish these facts, defendants have not

met their burden of proof for the period following May 28. As such, they may not claim their contractual right of setoff for that period.

We note that in their brief defendants state that Chapman resigned on a specified date. However, they cite no portion of the record for this information, as required by our rules. See Neb. Ct. R. of Prac. 9D(2)d (rev. 1992). When reviewing the decision of a lower court, we may consider only evidence included within the record. *Abboud v. Cutler*, 238 Neb. 177, 469 N.W.2d 763 (1991); *Hulse v. Schelkopf*, 220 Neb. 617, 371 N.W.2d 673 (1985). A party's brief may not expand the evidentiary record. *Obermeier v. Bennett*, 230 Neb. 184, 430 N.W.2d 524 (1988); *Father Flanagan's Boys' Home v. Goerke*, 224 Neb. 731, 401 N.W.2d 461 (1987). The alleged date of Chapman's resignation is not a part of the record, and thus, we may not consider it.

We recognize that a civil verdict will not be disturbed unless clearly erroneous. *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong. *State ex rel. Grams v. Beach, ante* p. 126, 498 N.W.2d 83 (1993); *City of LaVista v. Andersen*, 240 Neb. 3, 480 N.W.2d 185 (1992). Furthermore, when determining whether the evidence was sufficient to support the trial court's decision, we consider the evidence in the light most favorable to the successful party, resolving every controverted fact in that party's favor and giving that party the benefit of every reasonable inference deducible from the evidence. *In re Estate of Markus*, 232 Neb. 947, 442 N.W.2d 883 (1989); *Blanchette, supra.*

In the case before us, however, the evidence does not support a setoff in favor of defendants. In order to receive a setoff, defendants were required to show the period that Chapman served as an employee of the corporation and the amount, if any, of Chapman's bonuses. The record does not contain this essential information. Evidence not made part of the record cannot be given a favorable reading, nor can any beneficial inferences be deduced therefrom. The evidence in the record

does not support the district court's decision; the decision must therefore be reversed.

Defendants have not appealed the district court's grant of prejudgment and postjudgment interest. We thus reverse the setoff of $19,149.05 in favor of defendants and remand the cause to the district court to calculate appropriate interest.

REVERSED AND REMANDED WITH DIRECTIONS.

SHANAHAN, J., not participating.